IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, IDAHO WILDLIFE FEDERATION, WASHINGTON WILDLIFE FEDERATION, SIERRA CLUB, TROUT UNLIMITED, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, IDAHO RIVERS UNITED, IDAHO STEELHEAD AND SALMON UNITED, NORTHWEST SPORTFISHING INDUSTRY ASSOCIATION, SALMON FOR ALL, COLUMBIA RIVERKEEPER, AMERICAN RIVERS, INC., FEDERATION OF FLY FISHERS, and NW ENERGY COALITION, | CV 01-640-RE (Lead Case) CV 05-23-RE (Consolidated Cases) OPINION AND ORDER |

Plaintiffs,

and

STATE OF OREGON,

Intervenor-Plaintiff,

vs.

NATIONAL MARINE FISHERIES SERVICE,

Defendant,

and

STATE OF IDAHO, NORTHWEST IRRIGATION
UTILITIES, PUBLIC POWER COUNCIL,
WASHINGTON STATE FARM BUREAU
FEDERATION, FRANKLIN COUNTY FARM
BUREAU FEDERATION, GRANT COUNTY FARM
BUREAU FEDERATION, NORTHWEST
REQUIREMENT UTILITIES, PACIFIC
NORTHWEST GENERATING COOPERATIVES,
INDUSTRIAL CUSTOMERS OF NORTHWEST
UTILITIES, ALCOA, INC., and INTERNATIONAL
ASSOCIATION OF MACHINISTS & AEROSPACE
WORKERS,

     Intervenor-Defendants.

---

COLUMBIA SNAKE RIVER IRRIGATORS
ASSOCIATION and EASTERN OREGON
IRRIGATORS ASSOCIATION

     Plaintiffs,

  vs.

CARLOS M. GUTIERREZ,[1] in his official capacity
as Secretary of Commerce, NOAA
FISHERIES, and D. ROBERT LOHN,
in his official capacity as Regional Director
of NOAA Fisheries,

     Defendants.

REDDEN, Judge:

---

[1] The Hon. Carlos M. Gutierrez was confirmed and sworn in as Secretary of Commerce after this action was filed, and is substituted as defendant for the former Secretary of Commerce, the Hon Donald L. Evans.

2  -  OPINION AND ORDER

The matters before the court are National Marine Fisheries Service's motion to strike plaintiffs' (collectively, NWF) and *amici* Nez Perce Tribe, Confederated Tribes of the Umatilla Reservation, Confederated Tribes of the Warm Springs Reservation of Oregon, and Confederated Tribes and Bands of the Yakama Indian Nation) (collectively, Tribes) extra-record materials and briefs (doc. 789) in NWF v. National Marine Fisheries Service (NOAA),[2] and NOAA's motion to strike plaintiffs' (collectively, Irrigators) extra-record materials and brief (doc. 65) in Irrigators v. Gutierrez.[3] Oral argument is not necessary to resolve these motions.

## BACKGROUND

These consolidated cases involve separate challenges by NWF and the State Oregon in NWF v. NOAA, and Irrigators in Irrigators v. Gutierrez, to a biological opinion (2004BiOp) issued by NOAA following its consultation under Section 7 of the Endangered Species Act (ESA), 16 U.S.C. § 1532(a)(2), regarding future dam operations within the Federal Columbia River Power System (FCRPS). NWF and Irrigators have each filed motions for summary judgment that include declarations and exhibits. The Tribes have filed a memorandum with attached declarations and exhibits supporting NWF's motion in part. NOAA has moved to strike all the declarations and exhibits offered in support of the motions on the ground they constitute

---

[2] The named defendant, National Marine Fisheries Service, is a subagency of the National Oceanic and Atmospheric Administration (NOAA). It has now changed its name to NOAA Fisheries. The court adopts the name change and National Marine Fisheries Service is referred to as "NOAA" throughout, even for reference to historical agency actions that occurred before the effective date of the name change.

[3] For the sake of simplicity and clarity, the court refers to NOAA as if it were the defendant in both actions because NOAA issued the 2004BiOp that is the subject of this litigation even though NOAA is not a named defendant in Irrigators v. Gutierrez.

extra-record material the court may not consider on judicial review of final agency actions under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2).

This case began with a challenge by NWF, supported by the Tribes, to a biological opinion NOAA issued in December 2000 (2000BiOp). In May 2003, this court granted NWF's motion for summary judgment that the 2000BiOp was contrary to law and remanded the matter for a period of one year to afford NOAA the opportunity to collaborate with interested parties in an effort to correct the legal deficiencies in the 2000BiOp. In November 2004, NOAA issued the 2004BiOp.

NOAA moves to strike extra-record materials offered by NWF and the Tribes in support of NWF's motion for summary judgment in NWF v. NOAA, and offered by Irrigators in support of their motion for summary judgment in Irrigators v. Gutierrez..

The Honorable Garr M. King presided over this case before and for a period of time after the original motions for summary judgment were filed against the 2000BiOp. While he presided over the case, Judge King issued ruling on motions to strike that were similar to the motions now before the court. This court applies the same standards Judge King applied in ruling on those motions. In other words, the court's review on summary judgment focuses on the administrative record in existence when NOAA issued the 2004BiOp. The court, however, may consider extra-record materials if they meet any one of the following criteria: (1) they are necessary to determine if the agency considered all relevant factors and explained its decision; (2) the agency relied on documents not in the record; (3) they are necessary to explain technical or complex subject matter; or (4) NWF, the Tribes, or Irrigators make a showing of agency bad faith. Southwest Center for Biological Diversity v. United States Forest Service, 100 F.3d 1443, 1450

(9th Cir. 1996).  "Post-opinion information . . . may not be advance as a new rationalization for either sustaining or attacking an agency's decision."  Id.

There is no evidence NOAA considered documents not in the record or engaged in bad faith.  The court, therefore, must determine whether NOAA considered all relevant factors and explained its biological opinion, and/or whether the materials help to explain technical or complex subject matter.

## DISCUSSION

**A.**   **NWF v. NOAA.**

**1.**   **NWF's Extra-Record Materials**.

NWF moves for summary judgment on the grounds that (a) NOAA's jeopardy analysis in the 2004BiOp is contrary to law, (b) NOAA failed to consult on the entire agency action, (c)  NOAA's no-jeopardy finding is arbitrary and capricious, and (d) NOAA's critical habitat determinations are arbitrary and capricious.  In support of its motion, NWF relies on the declaration of John Kober, second declaration of Robert J. Masonis, and third declaration of Gretchen Oosterhout, Ph.D.  NOAA moves to strike each of the declarations on the ground none of them fit within any exception to the rule limiting judicial review to the administrative record in existence at the time the 2004BiOp was issued.  In addition, NOAA moves to strike NWF's memorandum in support of its motion for summary judgment because NWF's arguments in the memorandum rely on the improper extra-record materials.

### a. Kober Declaration and Second Masonis Declaration.

NWF asserts its only purpose for submitting the declarations of John Kober and Robert Masonis is to establish NWF's standing to bring this action. NOAA contends the contents of the declarations "stray well beyond" the issue of standing and address the merits of the 2000BiOp.

The issue of NWF's standing to bring this action has not been raised in any party's motion for summary judgment. The court notes, however, NOAA has asserted NWF's alleged lack of standing as a separate defense in its answer to NWF's second supplemental complaint, and presumably will continue to assert the defense when it responds to NWF's third supplemental complaint filed on March 22, 2005. Intervenor-defendants State of Idaho, Washington Farm Bureau, and BPA Customers do not affirmatively raise the defense of standing in their responsive pleadings, but they do specifically deny the allegations in NWF's second supplemental complaint that, if proved, may establish standing.

On this record, the court concludes it need not consider these declarations as part of its deliberation on the pending motions for summary judgment. In light of the potential, however, for NOAA or any of the intervenor-defendants to raise the issue of standing at any time during these proceedings, the court declines to strike the declarations.

### b. Third Oosterhout Declaration.

NOAA asserts Oosterhout's declaration "is an improper attempt to challenge [NOAA's] reasoned decision-making" by offering her own "allegedly 'expert' opinions and analysis" to criticize and attack the various models NOAA used in the 2004BiOp jeopardy analysis.

NWF asserts its challenge to the 2004BiOp is based on NOAA's failure to consider relevant factors and its disregard of contrary evidence. According to NWF, this court

### a. Kober Declaration and Second Masonis Declaration.

NWF asserts its only purpose for submitting the declarations of John Kober and Robert Masonis is to establish NWF's standing to bring this action. NOAA contends the contents of the declarations "stray well beyond" the issue of standing and address the merits of the 2000BiOp.

The issue of NWF's standing to bring this action has not been raised in any party's motion for summary judgment. The court notes, however, NOAA has asserted NWF's alleged lack of standing as a separate defense in its answer to NWF's second supplemental complaint, and presumably will continue to assert the defense when it responds to NWF's third supplemental complaint filed on March 22, 2005. Intervenor-defendants State of Idaho, Washington Farm Bureau, and BPA Customers do not affirmatively raise the defense of standing in their responsive pleadings, but they do specifically deny the allegations in NWF's second supplemental complaint that, if proved, may establish standing.

On this record, the court concludes it need not consider these declarations as part of its deliberation on the pending motions for summary judgment. In light of the potential, however, for NOAA or any of the intervenor-defendants to raise the issue of standing at any time during these proceedings, the court declines to strike the declarations.

### b. Third Oosterhout Declaration.

NOAA asserts Oosterhout's declaration "is an improper attempt to challenge [NOAA's] reasoned decision-making" by offering her own "allegedly 'expert' opinions and analysis" to criticize and attack the various models NOAA used in the 2004BiOp jeopardy analysis.

NWF asserts its challenge to the 2004BiOp is based on NOAA's failure to consider relevant factors and its disregard of contrary evidence. According to NWF, this court

"<u>necessarily</u> must look beyond the record to determine whether the agency conducted the proper analysis." NWF Resp. to Mot. to Strike, pp. 5-6 (emphasis added).

The court has carefully reviewed Oosterhout's declaration and finds the following materials are properly before the court:

**Paragraphs 1 through 5** - Oosterhout's background and qualifications; **paragraphs 6 through 9** - description of NOAA's assessment of the status of some of the listed ESUs; **paragraphs 10 through 20** - updated calculations of survival improvements from hydro and non-hydrosystem mitigation measures and analysis of those calculations using NOOA's 2000BiOp framework rather than the 2004BiOp framework; and **paragraph 21** - Oosterhout's conclusions as to whether it is possible to determine how NOAA's Updated Proposed Action (UPA) in the 2004BiOp would be evaluated under the framework for analysis employed by NOAA in the 2000BiOp.

The court agrees with NWF that the information in these paragraphs is helpful to the court in analyzing the potential impacts of the change in the jeopardy analysis framework between the 2000BiOp and the 2004BiOp.

In addition, the court finds the following information helpful to an understanding of the technical and complex issues addressed in the 2004BiOp: **paragraph 22** - description of NOAA's use of the SIMPAS and Fisher and Hinrichsen models in its jeopardy analysis; **paragraph 37** - description of the models NOAA used to analyze current population trends for listed ESUs; and **paragraphs 53 and 54** - description of how NOAA analysis of the "net effects" of FRCPS operations on the listed ESUs.

On the other hand, the court finds the following paragraphs are improper because, despite the delicate manner in which she casts her observations, Oosterhout is, in essence, attacking NOAA's analysis and/or the analytical tools NOAA used in the 2004BiOp: **paragraphs 23 through 36** - record of criticisms of the SIMPAS model and reasons why the model is flawed; **paragraphs 38 through 52 -** description of the differences in how NOAA analyzed the current growth rate of listed ESU populations in the 2000BiOp and the 2004 BiOp, and Oosterhout's conclusion that the Fisher and Hinrichsen methodology used by NOAA in the 2004BiOp is flawed: **paragraphs 55 through 69** - description of the shortcomings of NOAA's "net effects" analysis.

In summary, the court **grants in part** and **denies in part** NOAA's motion to strike NWF's extra-record materials as follows: **denies** the motion to strike the Kober declaration, the second Masonis declaration, and paragraphs 1 through 22, 37, 53 and 54 of the Oosterhout declaration, and **grants** the motion to strike paragraphs 23 through 36, 38 through 52, and 55 through 69 of the Oosterhout declaration. Finally, the court **denies** NOAA's motion to strike NWF's memorandum in support of its motion for summary judgment. The court, however, will disregard arguments in NWF's motion for summary judgment to the extent they rely on the extra-record materials the court has stricken.

    **2.**    **The Tribes' Extra-Record Materials.**

The Tribes have filed an *amici* memorandum in support of NWF's motion for summary judgment that includes the declarations of hydraulics engineer Thomas K. Lorz, fishery biologist Frederick E. Olney, and the Nez Perce Tribe's attorney, David Cummings, who authenticates four exhibits.

A threshold issued raised by NOAA is whether the Tribes, in their role as *amici*, are entitled to present any extra-record materials, whether proper or not.

The Ninth Circuit has held the district court has broad discretion to appoint *amicus*. See Hoptowit v. Ray, 682 F.2d 1237, 1260 (9th Cir.1982). "The classic role of amicus curiae . . .[is to assist] in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." Miller-Wohl Co. v. Commissioner of Labor & Industry, 694 F.2d 203, 204 (9th Cir.1982). In this case, the court has exercised its discretion to allow the Tribes, as well as other interested parties such as the State of Washington and Inland Ports and Navigation Group, to participate as *amici* because the issues in this case are of broad general public interest and specific local interest. NOAA, however, asserts what appears to a hard-and-fast rule that *amici* may not present evidence because they are not formal parties to the litigation. The court, however, has found no authority supporting such a broad proposition. Moreover, in the context of this court's judicial review of NOAA's administrative record, the court concludes appropriate extra-record materials, whether presented by parties or *amici*, serve the purpose of assisting the court because, here, appropriate materials specifically are those that help explain complex or technical scientific issues or help identify specific relevant factors NOAA failed to address in the 2004BiOp. The court also notes the Tribes, in one form or another, have been involved in FCRPS endangered species issues for many years. It would be counterproductive to exclude them from meaningful participation in this case, which includes the ability to present both legal arguments and extra-record materials that are of assistance to the court and that fall within the limited scope of the court's judicial review under the APA.

Accordingly, the court rejects NOAA's argument that the Tribes are barred from submitting extra-record materials. NOAA also argues, however, the Tribes' materials exceed the permissible purposes for such materials.

      **a.**      **Lorz Declaration.**

Lorz is a hydraulics engineer who serves as the Columbia River Inter-Tribal Fish Commission's (CRITFC) technical lead and representative for fish passage studies at the mainstem hydraulic projects for the Columbia and Snake Rivers. His declaration addresses, *inter alia,* NOAA's implementation of its Reasonable and Prudent Alternatives (RPA) in the 2000BiOp and the UPA (which incorporates many of the 2000BiOp RPA) in the 2004BiOp. Lorz also challenges the efficacy of NOAA's reliance on removable spillway weirs as a method of assisting juvenile fish passage through the dams.

NOAA asserts Lorz's declaration attacks NOAA's assumptions and analysis in the 2004BiOp. The Tribes argue Lorz's declaration helps to explain complex and technical issues. The Tribes also assert Lorz's declaration establishes NOAA failed to consider relevant factors in its jeopardy analysis.

The court has carefully reviewed Lorz's declaration and agrees with NOAA that, in general, the purpose of Lorz's declaration is to point out flaws in NOAA's analysis and isolate particular alternative methods of analysis that NOAA did not consider. Lorz states the Tribes made specific comments to NOAA regarding issues in the 2004BiOp and did not receive satisfactory answers. Lorz explains some part of NOAA's methodology and analysis, such as how it evaluates survival improvements attributed to the UPA, as well as NOAA's reliance on

removable spillway weirs, but the explanations are, in essence, merely a lead-in to Lorz's opinion that NOAA's methodolgy and analysis is flawed.

The court finds any benefit derived from Lorz's explanation of complex and technical terms is lost in the course of Lorz's explanations as to how and why NOAA failed to consider certain issues.  In addition, the court disagrees that NOAA failed to consider the relevant factors in its jeopardy analysis.  What NOAA did not consider are some of the analyses and studies that the Tribes would have preferred that NOAA rely on.

Accordingly, on balance, the court concludes Lorz's declaration improperly strays beyond the permissible purposes for extra-record materials on judicial review under the APA and is offered primarily to attack NOAA's conclusions.

        **b.**    **Olney Declaration**.

Olney is a former fish biologist for the Fish and Wildlife Service who is now employed by the Confederated Tribes of the Umatilla Indian Reservation.  NOAA asserts Olney's declaration "is clearly used to argue that the 2004BiOp is arbitrary and capricious by portraying a slanted view of the record and interjecting extra-record own analysis and data.  The Tribes assert Olney explains NOAA's complex analytical formulation.

The court finds Olney's declaration includes a helpful comparison of the differences between the framework NOAA employed in the 2004BiOp and previous biological opinions covering the FCRPS, although it also contains Olney's views on the merits of the 2004BiOp. Following a careful review, however, the court finds it is able to segregate information that assists the court in understanding complex and technical issues from Olney's criticisms of the

2004BiOp and that Olney's comparison of the framework for analysis between the present and previous BiOps is particularly helpful.

**Paragraphs 1 through 4** establish Olney's qualifications to address the complex and technical issues in the 2004BiOp, as well as previous BiOps. The court finds **paragraphs 5 through 16, 18 through 22, 24 through 27, 29 through 36, and 38 through 42** assist the court in understanding NOAA's framework for analysis of jeopardy in the 2004BiOp as well as the difference between that framework and the framework NOAA employed in the 1995BiOp and 2000BiOp. The court finds, however, the remaining paragraphs stray too far towards an attack or criticism of NOAA's analysis and do not fall within any of exceptions described above. The court also disregards the captions used by Olney in his declaration because they are argumentative.

        c.    **Cummings Declaration**.

Cummings is counsel for the Nez Perce Tribe. His declaration authenticates four exhibits. Exhibit A is the NOAA's 1993BiOp for FCRPS operations. Exhibits B, C, and D are post-2004BiOp documents. The court concludes Exhibit A is helpful in understanding the history of ESA consultations pertaining to the FCRPS. The remaining exhibits are post-decision documents that do not fall within any exception described above. The court, therefore, declines to consider them.

In summary, the court **grants in part** and **denies in part denies** NOAA's motion to strike the Tribes' extra-record materials as follows: the court **grants** NOAA's motion to strike the Lorz declaration, paragraphs 17, 23, 28, 37, and 43 through 49, and exhibit A of the Olney declaration, and exhibits B, C, and D of the Cummings declaration**,** and **denies** NOAA's motion

to strike paragraphs 1 through 16, 18 through 22, 24 through 27, 29 through 36, and 38 through 42 of the Olney declaration. Finally, the court **denies** NOAA's motion to strike the Tribes' memorandum in support of NWF's motion for summary judgment. The court, however, will disregard arguments in the Tribes' memorandum to the extent they rely on the extra-record materials the court has stricken.

**B.**     **Irrigators v. Gutierrez.**

Irrigators assert in their second motion for summary judgment that NOAA cannot identify a cause and effect relationship between river flow and fish survival, i.e., fish mortality is neither significantly increased by dam operations that reduce river flow, nor significantly decreased by mitigation actions such as increased spill over the dams that enhance river flow. Moreover, according to Irrigators, NOAA overestimates the benefits of other mitigation actions such as transportation of juvenile fish by barges to avoid the harmful impacts of the dams. Accordingly, Irrigators assert NOAA's "2004BiOp continues, generally speaking, to pretend that the vast majority of fish in the Columbia and Snake Rivers that die are killed *because of* the FCRPS existence and operations." Id., p. 5 (emphasis in original).

Irrigators argue that NOAA "failed [in the 2004BiOp] to offer an adequate explanation of its findings and policies regarding the impact of the dams on fish survival." Id., p. 6. To support and justify that argument, Irrigators submit the declaration of its attorney, James Buchal, and nine exhibits attached to the declaration that purportedly demonstrate how "NOAA has failed to consider the relevant factor - performance of transported fish versus the true alternative of leaving them go downstream by all passage routes . . . ." Irrigators Second Sum. Jud. Mem., p. 12, n.12.

The court has carefully reviewed Buchal's declaration and nine supporting exhibits. For the following reasons, the court finds the declaration and the exhibits are an improper attempt to supplement the record, not an effort to establish that NOAA failed to consider or explain relevant factors or to explain complex or technical issues:

**Paragraphs 1 and 2** - description of Buchal's involvement in litigation regarding the FCRPS and Section 7 consultation under the Endangered Species Act, 16 U.S.C. § 1536(a)(2); **paragraphs 3 through 6** - description of Buchal's relationships with Dr. William McNeil who prepared a paper (exh. 1) addressing the impact of dams on the survival of fish in the Columbia River Basin and Dr. Darryll Olsen, a resource economist who prepared papers (exhs. 2 and 3) regarding salmon production trends in the Columbia River Basin; **paragraph 7** - description of four recent studies (exh. 4) addressing survival of marked salmon in the Snake River Basin that are identified in NOAA's administrative record; **paragraphs 8 through 11** - Buchal's analysis of the extent of salmon losses resulting from dam operations (exh. 5), and his conclusion that, notwithstanding the four studies in exhibit 4, NOAA failed to consider data (Buchal's calculations) that was necessary in order for NOAA to make a "competent analysis" of its estimation of salmon's natural river survival rate; **paragraphs 12 through 15** - description of Buchal's ongoing efforts to study the "efficacy on the smolt transportation program" and his determination that NOAA's conclusions regarding the benefits of juvenile fish transportation are flawed because NOAA failed to use the best science available to determine the effects of river flow on juvenile salmon, including Buchal's "impression that the court cannot fairly evaluate whether or not [NOAA] has used the best available scientific information . . . without some general background of the history of scientific advancement in this area;" **paragraphs 16**

**through 18** - Buchal's recommendation to the court that it review papers written by Dr. James Anderson and Chris Van Holmes (exh. 7), Dr. Anderson (exh. 8), and University of Washington researchers (exh. 9) that establish a "better model" for analyzing the effects of river flow on juvenile salmon rather than NOAA's "primitive 'broken stick' effort."

The court finds none of the material in Buchal's declaration pertains to relevant factors NOAA failed to consider or explain in the 2004BiOp. Clearly, NOAA considered fish survival relative to FCRPS operations and juvenile fish transportation benefits and explained its conclusions at great length in the 2004BiOp. Moreover, it is apparent Irrigators have not presented Buchal's declaration to explain complex and technical matters in the 2004BiOp. Rather, paragraphs 1 through 11 of Buchal's declaration attack NOAA's conclusion that the operation of the FRCPS has an adverse effect on salmon survival on the ground that it is based on incomplete or flawed information, and paragraphs 12 through 18 of Buchal's declaration attack NOAA's conclusion that juvenile salmon transportation programs benefit juvenile fish because it also is based on flawed information regarding the effects of river flow. Finally, the court also rejects Buchal's opinions or analysis in this matter. Buchal has not established by education, training, or by experience, outside of his role as an attorney in this and related proceedings, that he is qualified to render such opinions and analysis.

Accordingly, the court concludes Buchal's declaration is inadmissible under Fed. R. Evid. 702 to the extent Buchal renders opinions or analyses on technical and scientific matters. In any event, Buchal's declaration and attached exhibits do not fall within any exception to the rule that the court should consider only those materials that were part of NOAA's administrative record when it issued the 2004BiOp.

The court, therefore **grants** NOAA's motion to strike Buchal's declaration and the exhibits attached to it. The court, however, **denies** NOAA's motion to strike Irrigators' memorandum in support of its motion for summary judgment. The court, however, will disregard arguments in Irrigators' motion for summary judgment to the extent they rely on the extra-record materials the court has stricken.

## CONCLUSION

Based on the foregoing, the court **grants in part** and **denies in part** NOAA's motion to strike NWF's and *amici* Tribes*'* extra-record materials and briefs (doc. 789) in <u>NWF v. NOAA</u>, and **grants** defendant NOAA's motion to strike extra-record materials and brief (doc. 65) in <u>Irrigators v. Gutierrez</u>.

IT IS SO ORDERED:

DATED this 8th day of April, 2005.

 /S/ James A. Redden
James A. Redden
United States District Judge

nwf.opinion.motions.strike.4.8.wpd